IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ROBERT STAUDMIER,** <br><br> Plaintiff, <br><br> v. <br><br> **MICHAEL J. ASTRUE**, Commissioner of Social Security, <br><br> Defendant. | Case No.: 6:10-cv-00716-SI <br><br> **OPINION AND ORDER** |

MERRILL SCHNEIDER
Schneider Law Offices
PO Box 14490
Portland, OR  97293

    Of Attorneys for Plaintiff

AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR  97204-2902

TERRYE SHEA
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Of Attorneys for Defendant

**SIMON, District Judge,**

## I. INTRODUCTION

Robert Staudmier ("Mr. Staudmier") brings this action under 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). The court has jurisdiction under 42 U.S.C. § 405(g).

Mr. Staudmier contends that the Commissioner failed to consider whether he suffers from mental retardation, did not adequately consider his obesity, erroneously discounted medical evidence, and should have obtained additional evidence of his physical condition. The court largely agrees. The decision of the Commissioner is, therefore, reversed, and the case remanded for further proceedings consistent with the instructions described below.

## II. BACKGROUND

### A.   Procedural History

Mr. Staudmier alleges that he suffers from chronic pain, arthritis, attention deficit / hyperactivity disorder, bipolar disorder, and memory and learning problems. Tr. 31, 33, 35, 235-37. He has worked sporadically in the service and construction industries and was incarcerated between 1988 and 1994. Tr. 116, 166. On February 13, 2006, at the age of 41, Mr. Staudmier applied for Disability Insurance Benefits ("DIB") and SSI. Tr. 114-22. The Commissioner denied his applications initially and on reconsideration. Tr. 56-65, 77-82.

At Mr. Staudmier's request, Administrative Law Judge ("ALJ") Richard A. Say conducted a hearing on March 4, 2009. Tr. 27-49, 83. At the beginning of the hearing, Mr. Staudmier decided to forego his DIB claim and pursue only the SSI claim. Tr. 30. Following the hearing, the ALJ issued a written decision denying benefits. Tr. 16-26. The Appeals Council

declined review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Mr. Staudmier now requests judicial review of that decision.

B.  **Medical and Other Evidence**

Mr. Staudmier testified that he suffers from attention deficit/hyperactivity disorder ("ADHD"), bipolar disorder, learning disorders, arthritis, scoliosis, and degenerative disc disease. Tr. 31-33. Mr. Staudmier has not had a comprehensive physical evaluation, but emergency rooms records, self-reports during psychological evaluations, and a residual functional capacity assessment indicate that Mr. Staudmier has consistently reported back and joint pain. *See, e.g.,* Tr. 260, 295, 311, 542-43, 602. Mr. Staudmier has apparently suffered several on-the-job injuries and has received some worker's compensation benefits. Tr. 441, 468-79, 578. In 1987, Mr. Staudmier suffered an injury to his right elbow and ulnar nerve that required an operation to repair. Tr. 439. This injury reportedly causes some limitation in his right arm range of motion. Tr. 542, 574.

Mr. Staudmier participated in two psychological evaluations. Dr. Sharon Labs conducted a neuropsychological evaluation on May 14, 2002. Mr. Staudmier reported to Dr. Labs chronic pain, including pain in his lower back, cervical spine, and shoulder. Tr. 250. He also claimed to suffer from frequent headaches. Tr. 250. Dr. Labs noted a history "of musculoskeletal, shoulder and upper extremity injuries," as well as several surgeries, accidents, blackouts, a seizure, and exposure to toxic chemicals. Tr. 251, 257. Dr. Labs observed "significant pain behavior" during the evaluation. Tr. 253. Mr. Staudmier had been abstinent from recreational drugs and alcohol for four years, but had an "extensive history of polysubstance use and dependence." Tr. 252.

Dr. Labs performed a battery of neuropsychological testing. She found that on "the WAIS-III,[1] Mr. Staudmier obtained a Verbal Scale IQ score of 86 . . . a Performance Scale IQ of 85 . . . and a Full Scale IQ score of 85 . . . which places him in the Low Average Range of intellectual abilities." Tr. 254. Dr. Labs noted "significant deficits in attention and mental tracking, visual processing, new learning, short-term memory for both verbal and visual information, and motor functioning of the right upper extremity." Tr. 257. She added that there "is some indication that Mr. Staudmier has functioned at a higher level in the past." Tr. 257.

Based on the tests and her evaluation, Dr. Labs diagnosed attention deficit/hyperactivity disorder; chronic, mild expressive language disorder;[2] disorder of written expression;[3] cognitive disorder not otherwise specified; chronic pain disorder with both psychological factors and a general medical condition, and polysubstance dependence in sustained full remission.[4] Tr. 259. Dr. Labs recommended that "Mr. Staudmier complete a physical capacities evaluation to

---

[1] "WAIS" is an acronym for "Wechsler Adult Intelligence Scale," an intelligence test "designed to assess cognitive function in individuals over the age of 16." TABER'S CYCLOPEDIC MEDICAL DICTIONARY 2491 (Donald Venes et al. eds. 2009).

[2] "The essential feature of Expressive Language Disorder is an impairment in expressive language development as demonstrated by scores on standardized individually administered measures of expressive language development substantially below those obtained from standardized measures of both nonverbal intellectual capacity and receptive language development." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 58 (4th ed. 2000).

[3] "The essential feature of Disorder of Written Expression is writing skills . . . that fall substantially below those expected given the individual's chronological age, measured intelligence, and age-appropriate education[.]" AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 54-55 (4th ed. 2000).

[4] "Sustained full remission" means that "none of the criteria for [d]ependence or [a]buse have been met at any time during a period of 12 months or longer." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 196 (4th ed. 2000).

Page 4 – OPINION AND ORDER

objectively determine his capacities." Tr. 258. She also stated that his history of blackouts and reported seizures "warrants further investigation." Tr. 257.

Four years later, on April 5, 2006, Dr. Caleb Burns conducted a neuropsychological screening. Tr. 539. Mr. Staudmier reported that he suffered from back pain and arthritis, memory loss, ADHD, and auditory hallucinations. Tr. 542, 546. Dr. Burns observed that Mr. Staudmier "appeared to be in pain through much of" the evaluation and showed no signs of exaggeration or malingering. Tr. 547. Dr. Burns administered a battery of neuropsychological test. On the WAIS-III, he found that Mr. Staudmier had a verbal IQ of 84, and a full scale IQ of 79.[5] Mr. Staudmier performed poorly on memory tests: Those scores were "much lower than what one would expect from him given his" IQ scores. Tr. 550. On a mood assessment scale, "Mr. Staudmier obtained a score suggesting severe depression[.]" Tr. 551.

Dr. Burns diagnosed dementia; schizoaffective disorder; attention deficit disorder; methamphetamine and mixed drug abuse in remission; borderline intellectual functioning; and "[r]eported chronic pain." Tr. 552. Dr. Burns noted that Mr. Staudmier "appears to be experiencing pronounced chronic pain but this is a finding that should be made by a physician, rather than by me, a psychologist." Tr. 552.

Dr. Dorothy Anderson, who did not personally examine Mr. Staudmier, completed a mental residual functional capacity assessment. Tr. 579-81. She concluded that Mr. Staudmier was "capable of performing simple[,] routine[,] one-two [step] tasks [without] special supervision." Tr. 581. She also noted that he would "best be suited in jobs not requiring direct contact with the public and/or close interaction with co-workers" and that he "should avoid jobs involving hazards/machinery[.]" Tr. 581.

---

[5] Dr. Burns also recorded a performance IQ score. That score is listed as 70 on one page and as 78 on another. Tr. 548, 554. See discussion in section V.A, below.

Page 5 – OPINION AND ORDER

## III. DISABILITY DETERMINATION AND STANDARDS

A.  **Legal Standards**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

"Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011) (citing 20 C.F.R. § 404.1520). The *Keyser* court described the five steps in the process as follows:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

The claimant bears the burden of proof for the first four steps in the process. If the claimant fails to meet the burden at any of those four steps, then the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d at 949, 953-54 (9th Cir. 2001); *see Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); 20 C.F.R. §§ 404.1520(g) (setting forth general standards for evaluating disability).

The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and word experience." *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999). If

the Commissioner fails meet this burden, then the claimant is disabled, but if the Commissioner proves the claimant is able to perform other work which exists in the national economy, then the claimant is not disabled. *Bustamante*, 262 F.3d at 954 (citing 20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1098-99); 20 C.F.R. § 404.1566 (describing "work which exists in the national economy").

**B.     The ALJ's Decision**

The ALJ applied the Commissioner's five-step sequential disability determination process set forth in 20 C.F.R. § 416.920. The ALJ agreed that Mr. Staudmier was not engaged in substantial gainful activity and, consequently, satisfied step one. Tr. 18.

At step two, the ALJ found that Mr. Staudmier suffered from several impairments: "low back pain, status post ulnar nerve injury at the right elbow, a cognitive disorder/borderline intellectual functioning, and an affective disorder not otherwise specified[.]" Tr. 18. The ALJ determined that the combination of these impairments "is found to be severe." Tr. 18.

At step three, the ALJ found that Mr. Staudmier "does not have an impairment or combination of impairments that meets or medically equal one of the listed impairments[.]" Tr. 19. The ALJ noted that no "treating, examining, or reviewing medical provider or evaluator found otherwise." Tr. 19.

The fourth and fifth steps require the ALJ to determine how the claimant's impairments affect his ability to perform work. To make this determination, the ALJ formulates the claimant's residual functional capacity ("RFC"). An RFC "is the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). An RFC "is used at step 4 of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work, considering his or her age,

Page 7 – OPINION AND ORDER

education, and work experience." Social Security Ruling ("SSR") 96-8p.[6] The ALJ found that Mr. Staudmier retained an RFC to perform light work. In addition, the ALJ found that Mr. Staudmier could "understand and remember short, simple instructions and perform routine tasks[.]" Tr. 20. The ALJ noted some restrictions, including prohibitions on exposure to hazards and extreme cold, contact with the public, and "prolonged use of the telephone." Tr. 20.

After the ALJ has formulated the claimant's RFC, the ALJ must consider whether the claimant can, in light of that RFC, perform past or other work. To do so, the ALJ may rely on the testimony of a vocational expert ("VE"). 20 C.F.R. § 416.960(b)(2); 20 C.F.R. § 416.966(e). Typically, the ALJ asks the VE whether, given certain hypothetical assumptions about the claimant's capabilities, "the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.3 (9th Cir. 1988). In response, the "VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001).

The ALJ called a VE to testify during the administrative hearing. The ALJ asked the VE to consider a hypothetical claimant with restrictions similar to those formulated for Mr. Staudmier's RFC:

> [A]ssume that we have an individual 44 years old with the equivalent of a high school education. . . . Let's say he's limited to light exertional level activities. That would be lifting and carrying up to ten pounds frequently, 20 pounds occasionally; standing and walking up to six hours out of an eight-hour day; sitting the same, about six hours out of an eight-hour day. This individual can . . . occasionally reach overhead with the right arm . . . should avoid exposure to hazards, extreme cold; should not be involved in prolonged use of the telephone; able to understand, remember, and carry out simple, short, simple

---

[6] The Commissioner publishes rulings to clarify the Social Security Administration's regulations and policy. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991) (en banc). Although they do not carry the force of law, SSRs are binding on ALJs. *Bray v. Comm'r*, 554 F.3d 1219, 1224 (9th Cir. 2009).

Page 8 – OPINION AND ORDER

instructions, perform routine tasks; should have no interaction with the general public, superficial interaction with coworkers. Tr. 46-47.

Bearing those restrictions in mind, the ALJ asked the VE whether that hypothetical claimant could perform either Mr. Staudmier's past relevant work or other work in the national economy. Tr. 47.

The VE replied that such a claimant could not perform Mr. Staudmier's past relevant work, but could perform other work available in the national economy. Tr. 47. The VE identified two jobs: a hand-packager and a general electronics worker. Tr. 47-48. Based on the VE's testimony, the ALJ found that Mr. Staudmier "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 26. The ALJ thus concluded that Mr. Wageman was not disabled. Tr. 26

## IV. STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## V. DISCUSSION

Mr. Staudmier contends that the ALJ erred by: (1) failing to discuss whether Mr. Staudmier met Listing 12.05(C) at step three of the sequential analysis relating to impaired intellectual functioning; (2) failing to consider the effects of Mr. Staudmier's obesity; (3)

Page 9 – OPINION AND ORDER

improperly rejecting the medical opinions of Drs. Caleb Burns and Dorothy Anderson; and (4) denying Mr. Staudmier's request for a physical consultative examination. Pl.'s Br. 8-16. The court does not reach Mr. Staudmier's first contention because the evidence establishing Mr. Staudmier's performance IQ is contradictory. With the respect to the remaining contentions, the court concludes that the ALJ erroneously discredited the diagnosis of obesity; improperly rejected one of Dr. Burns's diagnoses; and erred in failing to order a consultative examination.

### A.     Step Three Error

Mr. Staudmier first argues that the ALJ should have found him disabled at step three of the sequential analysis because his impaired intellectual functioning meets one of the criteria for mental retardation in the Listing of Impairments. Pl.'s Br. 8; 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("App. 1") § 12.05. The court does not reach Mr. Staudmier's argument, however, because the record is contradictory and must be clarified by the ALJ.

Mr. Staudmier contends that Dr. Burns assessed a performance IQ score of 70. Pl.'s Br. 9. The ALJ also found that Dr. Burns assessed Mr. Staudmier as having a performance IQ of 70. Tr. 22. If that assessment is correct, Mr. Staudmier may be able to establish that he meets one of the criteria for the listing for mental retardation, which requires that he show that he has a "valid verbal, performance, or full scale IQ of 60 through 70[.]" App. 1 § 12.05(C). Establishing that he has a performance IQ score of 70 is, therefore, crucial to Mr. Staudmier's argument.

Substantial evidence, however, does not support the finding that Dr. Burns assessed a performance IQ score of 70. During his narrative description of the test results, Dr. Burns listed a performance IQ of 70. Tr. 548. But on the attached "WAIS-III and WMS-III Summary Report," Dr. Burns recorded a performance IQ score of 78. Tr. 554. Dr. Burns does not discuss the score elsewhere in his evaluation. It thus seems likely that one of the scores is correct and one is a

typographical error. The record does not provide a basis on which to determine which is correct. As such, the court finds that the record evidence is not "adequate to support a conclusion" in favor of either score. *See Richardson*, 402 U.S. at 401 (substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks and citation omitted)). The ALJ's finding of a score of 70 was not supported by substantial evidence and was, therefore, error. On remand, the Commissioner should determine what score Dr. Burns assessed as Mr. Staudmier's performance IQ. If Dr. Burns assessed a performance IQ of 70, the ALJ should issue a new decision considering whether Mr. Stuadmier meets the listing for mental retardation. *See Sorter v. Astrue*, 389 Fed. Appx. 620, 621-22 (9th Cir. 2010) (remanding for consideration of § 12.05(C) where the claimant presented evidence that he had IQ scores of 67 and 70, he was in special education classes throughout his school years, and he was diagnosed with other severe impairments).

**B.     Consideration of Obesity**

Mr. Staudmier argues next that the ALJ erred in his finding that Mr. Staudmier's obesity was not a medically determinable impairment because it had been diagnosed by a nurse practitioner. Pl.'s Br. 16-17. The Commissioner concedes that the ALJ erred. Def.'s Br. 8. Obesity does not need to be diagnosed by an acceptable medical source. SSR 02-1p. Nonetheless, the Commissioner contends that this error was harmless because Mr. Staudmier failed to establish that his obesity impaired his ability to perform basic work activities. Def.'s Br. 8. The court agrees that the error was harmless.

Harmless error "applies in the Social Security context." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). To be considered harmless, error must be "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Id.* at 1055. The burden to show prejudice

Page 11 – OPINION AND ORDER

is on the party claiming the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011).
Mr. Staudmier has failed to show – and the record does not reveal – how the ALJ's error
prejudiced him. *See* Tr. 266, 632-41 (diagnosing obesity but citing no accompanying
limitations). In the absence of any evidence showing that Mr. Staudmier's obesity limited his
ability to work, the ALJ's error is harmless. *See Burch v. Barnhart*, 400 F.3d 676, 681-84 (9th
Cir. 2005) (concluding that ALJ did not commit reversible error in failing to consider claimant's
obesity where claimant failed to demonstrate that consideration of obesity could have plausibly
changed the outcome of the sequential analysis). Given, however, that the court concludes that
remand is appropriate for other reasons discussed in sections V.A., V.C, and V.D, the ALJ
should consider Mr. Staudmier's obesity as required in SSR 02-1p when he or she issues a new
decision on remand.

C.     **Assessment of Medical Evidence**

The ALJ "is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). As part of that responsibility, the ALJ must determine the weight to give each source of evidence. 20 C.F.R. § 416.927(d), (f). The standards for evaluating the opinions of medical sources, such as Drs. Burns and Anderson, differ depending on the extent of contact the source had with the claimant and whether the source is contradicted by other sources in the record. *Lester v. Chater*, 81 F.3d 821, 830-33 (9th Cir. 1995). In general, an ALJ should "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" the claimant. 20 C.F.R. § 416.927(d)(1).

If the opinion of an examining doctor, such as Dr. Burns, is contradicted by the opinions of other medical sources, the ALJ may reject that opinion only if the ALJ provides "'specific and

Page 12 – OPINION AND ORDER

legitimate reasons' supported by substantial evidence in the record[.]" *Lester*, 81 F.3d at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ "'can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

### 1.  Dr. Burns

Mr. Staudmier argues that the "ALJ failed to give specific and legitimate reasons for rejecting Dr. Burns'[s] opinion." Pl.'s Br. 13. In particular, Mr. Staudmier contends that the ALJ improperly discounted two of Dr. Burns's diagnoses: (1) that Mr. Staudmier suffered from dementia; and (2) that Mr. Staudmier suffered from ADHD Pl.'s Br. 14. He also argues that the ALJ improperly characterized the severity of the GAF score Dr. Burns assigned.

#### a.  Dementia

Dr. Burns diagnosed Mr. Staudmier with both Dementia and ADHD. Tr. 552. The ALJ found that neither of these conditions was severe at step two of the sequential analysis. Tr. 19. The ALJ offered one reason to discount Dr. Burns's diagnosis of dementia at step two: He stated that it was a "one[-]time" diagnosis with only "meager development." Tr. 19. The court disagrees: Dr. Burns's applied the diagnostic criteria for dementia and his conclusions were supported by his test results, personal observations, and the patient's history. Moreover, Dr. Burns's findings are consistent with similar findings made by Dr. Labs four years earlier.

The diagnostic criteria for dementia require findings of cognitive deficits ("Criterion A") and impairments ("Criterion B"). AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 162 (4th ed. 2000) ("DSM-IV"). Under Criterion A, the individual must display "the development of multiple cognitive deficits manifested by both (1)

Page 13 – OPINION AND ORDER

memory impairment . . . (2) one (or more) of the following cognitive disturbances: . . . (d) disturbance in executive functioning." DSM-IV at 168. Criterion B requires evidence that those deficits in memory and executive functioning have caused "significant impairment in social or occupational functioning and represent a significant decline[.]" *Id.*

Dr. Burns's diagnosis addressed both criteria A and B. With respect to Criterion A, he noted that "Mr. Staudmier showed on the Wechsler Memory Scale-III significant memory impairment." Tr. 551. Dr. Burns also found that "[i]n terms of a disturbance in executive functioning . . . Mr. Staudmier has been increasingly unable to act in a planful fashion . . . [and] largely sits at home[.]" Tr. 551. Under Criterion B, he found that "[t]hese cognitive deficits each cause significant impairment in social and occupational functioning and they appear to represent a significant decline from the previous level of functioning." Tr. 551. Dr. Burns clearly addressed the requirements of the diagnostic criteria for dementia.

Moreover, the only other neuropsychological evaluation in the record, Dr. Labs evaluation, largely supports Dr. Burns's findings. Dr. Labs's found, based on neuropsychological testing, that Mr. Staudmier had "significant deficits" in memory. Tr. 255. She also found that his executive function was in the low average range in most areas. Tr. 256. She added that Mr. Staudmier's "performance on [executive functioning] tests suggest that he may have been functioning at a higher cognitive level premorbidly[.]" Tr. 256. In her summary, she noted that Mr. Staudmier's "cognitive deficits are significant[.]" Tr. 258. Dr. Labs diagnosed Mr. Staudmier as having a cognitive disorder, not otherwise specified. Tr. 259. Although she did not also diagnose dementia, a cognitive disorder not otherwise specified is grouped under the same section as dementia in the DSM-IV. *See* DSM-IV at 135-180 ("Delirium, Dementia, and Amnestic and Other Cognitive Disorders"). Both disorders, according to the DSM-IV, involve a

Page 14 – OPINION AND ORDER

"clinically significant deficit in cognition that represents a significant change from a previous level of functioning." DSM-IV at 135. In short, the ALJ's assertion that Dr. Burns's diagnosis of dementia had only "meager development" is not supported by substantial evidence and is, therefore, error.

      **b.**    **ADHD**

Both Dr. Labs and Dr. Burns diagnosed Mr. Staudmier with ADHD. The ALJ discounted their diagnosis, however, because he found that it was "based on the claimant's subjective report of symptoms of which there are significant credibility concerns[.]" Tr. 19. This is a valid reason to discount a doctor's diagnosis: An ALJ "may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999)). The ALJ found that Mr. Staudmier's testimony was, at least in part, "not credible." Tr. 21-23. Mr. Staudmier does not contest that finding here.

Mr. Stuadmier argues instead that the ALJ's reason to discount the diagnosis was insufficient because "Dr. Burns'[s] diganos[is] was based upon multiple objective test[s]." Pl.'s Br. 14. It does not appear from his report, however, that Dr. Burns's based the ADHD diagnosis on test results. He wrote: "In terms of additional diagnoses from the DSM-IV, Mr. Staudmier reports a history of attention-deficit/hyperactivity disorder[.]" Tr. 552. Dr. Burns does not otherwise discuss a diagnostic basis for ADHD. In any event, Dr. Burns could not have based his diagnosis on "objective tests," since testing plays no role in the diagnosis of ADHD: "There are no laboratory tests, neurological assessments, or attentional assessments that have been established as diagnostic in the clinical assessment of [ADHD]." DSM-IV at 88-89. Finally, while Dr. Labs also diagnosed ADHD, her diagnosis was based "on [her] understanding of

Page 15 – OPINION AND ORDER

Mr. Staudmier's history as he presented it[.]" Tr. 257. Thus, the court concludes that the ALJ correctly discounted the diagnosis of ADHD because it was based only on Mr. Staudmier's personal statements.

    c.    **GAF score**

Mr. Staudmier also argues that the ALJ mischaracterized the level of functioning indicative of the GAF score assigned by Dr. Burns: "[T]he ALJ concluded that the GAF score assessed by Dr. Burns indicated moderate symptoms; this level of GAF actually indicates serious symptoms." Pl.'s Br. 13 (emphasis omitted). Dr. Burns assigned a GAF score of 50. Tr. 553. Mr. Staudmier is correct that a score of 50 indicates "serious symptoms," DSM-IV at 34, and that the ALJ erroneously stated that the score corresponds to only "moderate symptoms." Tr. 24. Nonetheless, this minor error does not demonstrate that the ALJ incorrectly assessed Dr. Burns's report. In fact, the ALJ accepted Dr. Burns's GAF score of 50. As such, the error appears to be harmless.[7]

    2.    **Dr. Anderson**

Mr. Staudmier contends that the ALJ erroneously discounted the report prepared by Dr. Dorothy Anderson, a non-examining physician. Dr. Anderson found, in part, that Mr. Staudmier is "capable of performing simple[,] routine[,] one-two [step] tasks [without] special supervision." Tr. 581. During the hearing, the ALJ asked the VE to consider a hypothetical claimant who was "able to understand, remember, and carry out simple, short, simple instructions, perform routine tasks." Tr. 47. Although the ALJ's description of

---

[7] Mr. Staudmier adds that "a GAF score of 50 is generally support[ive] of a claim of disability." Pl.'s Br. 13. The case he cites for this proposition, *Purvis v. Comm'r*, 57 F. Supp. 2d 1088 (D. Or. 1999), finds the opposite. The court decided that a GAF score of 50 did not require a finding of disability: "I do not agree with claimant that the provisional past GAF rating of 50 required the ALJ to find her disabled." *Id.* at 1094. In any event, Mr. Staudmier does not explain why his GAF score establishes that he is disabled.

Page 16 – OPINION AND ORDER

Mr. Staudmier's limitations largely tracked Dr. Anderson's report, the ALJ did not include the limitation to one-to-two step tasks. Mr. Staudmier contends that the ALJ's failure to include the limitation to one-to-two step tasks created an error: the VE's response to the hypothetical included two jobs – hand packager and electronics worker – that could only be completed by individuals capable of performing more than one-to-two step tasks.[8]

The ALJ, however, was not required to include in his hypothetical question all of the limitations described by Dr. Anderson. An ALJ's hypothetical need only include those limitations that are supported by substantial evidence. *Robbins v. Social Security Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). The opinions of non-examining doctors, such as Dr. Anderson, do not, on their own, constitute substantial evidence. *Lester*, 81 F.3d at 831 (uncorroborated non-examining doctor's opinion does not constitute substantial evidence). No evidence in the record corroborates Dr. Anderson's limitation to one-to-two step tasks. It was not, therefore, based on substantial evidence and the ALJ was not required to include it in his hypothetical question.

D.      **Development of the Record**

Finally, Mr. Staudmier contends that the "ALJ erred by not ordering a physical examination[.]" Pl.'s Br. 11-12. During Mr. Staudmier's hearing, his counsel stated, "I'm just wondering maybe a physical [consultative examination] might be appropriate in this case. . . . I mean any physical records are pretty old. . . . I know there's the RFC, but I don't think there's any examination." Tr. 43. The ALJ replied that he would "think about it." Tr. 43. The ALJ did not order a consultative examination. Given the paucity of medical records documenting

---

[8]     Mr. Staudmier's argument on this point is based on categories and ratings described in the Dictionary of Occupational Titles. Because the court concludes that the ALJ was not required to include Dr. Anderson's limitation to one-to-two step tasks in the hypothetical question, it is unnecessary to further explore the merits of Mr. Staudmier's argument.

Page 17 – OPINION AND ORDER

Mr. Staudmier's physical condition, as well as remarks from both examining psychologists suggesting a physical examination, the court finds that the ALJ should have ordered a consultative physical examination.

A claimant does not have "an affirmative right to have a consultative examination performed by a chosen specialist." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). The Commissioner may, however, order an examination "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim." 20 C.F.R. § 416.919a(b); *see also* §§ 416.917, 416.927(c)(3). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks and citation omitted). The court may reverse and remand the Commissioner's final decision where the court concludes that the ALJ should have ordered a consultative examination. *See Reed*, 270 F.3d at 843-45 (reversing and remanding based in part on ALJ's failure to order consultative examination).

Although the record contains two psychological evaluations, there is no comprehensive evaluation of Mr. Staudmier's physical condition. Both examining psychologists recommended that Mr. Staudmier undergo such an evaluation. Dr. Labs observed that "Mr. Staudmier demonstrated rather significant pain behavior today." Tr. 258. She recommended that "Mr. Staudmier complete a physical capacities evaluation to objectively determine his capacities." Tr. 258. Dr. Burns, who evaluated Mr. Staudmier four years later, reached the same conclusion. He noted that "Mr. Stuadmier appeared to be in pain through much of this evaluation." Tr. 547. Dr. Burns added that a physician should review Mr. Staudmier's pain symptoms: Mr. Staudmier "appears to be experiencing pronounced chronic pain but this is a

finding that should be made by a physician, rather than by me, a psychologist." Tr. 552.

The ALJ noted that Mr. Staudmier had undergone only a "sparse course of treatment." Tr. 22. Indeed, the record contains almost no recent medical evidence documenting Mr. Staudmier's physical condition. The most recent documents are emergency room reports from 2005. *See* Tr. 311-12, 320-21, 325-26, 332-33. These reports do little more than document Mr. Staudmier's complaints at the time and do not thoroughly evaluate his physical condition. Given that both psychological examiners noted evidence of physical limitations, and given that the ALJ apparently accepted that Mr. Staudmier suffered from low back pain and an ulnar nerve injury, the absence of comprehensive medical evidence of Mr. Staudmier's physical condition clouds the resolution of his claim. As such, the court finds that the "evidence as a whole, both medical and nonmedical, is not sufficient to support" the ALJ's decision finding Mr. Staudmier not disabled. The ALJ should have ordered a consultative examination to thoroughly evaluate Mr. Staudmier's physical condition. *See Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) ("the ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability"); *Schultz v. Astrue*, 362 Fed. Appx. 634, 636 (9th Cir. 2010) (ALJ should have order a consultative examination where evidence was ambiguous).

The "decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). The court concludes that remand is necessary in this case to determine Mr. Staudmier's performance IQ score, obtain a physical consultative examination, and reassess whether Mr. Staudmier suffers from dementia. On remand, the Commissioner should also consider Mr. Staudmier's obesity as

Page 19 – OPINION AND ORDER

required in SSR 02-1p.

## VI. CONCLUSION

The decision of the Commissioner is **REVERSED** and the case **REMANDED** for further proceedings. In particular, the Commissioner should determine Dr. Burns's assessment of Mr. Staudmier's performance IQ score; consider Mr. Staudmier's obesity according to the guidelines set forth in SSR 02-1p; re-evaluate Dr. Burns's conclusion that Mr. Staudmier suffers from dementia; if necessary, consider whether Mr. Staudmier meets the listing for dementia at step three of the sequential analysis; and develop the record by ordering a physical consultative examination.

IT IS SO ORDERED.

Dated this 23rd day of December, 2011

Michael H. Simon
United States District Judge